**David L. DILLARD, Plaintiff,**

v.

**Willie JONES, et al., Defendants.**

**No. Civ.A. 1:97CV0788–JOF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 25, 2000.

---

J. Malik Abdullah Frederick, E. Michael Moran, Stone Mountain, GA, for plaintiff.

Frank Philips Harris, Harris, Morgan & Parson, Marietta, GA, John C. Jones, Kathleen Mary Pacious, Office of State Attorney General, Atlanta, GA, Nelly F. Withers, McNally, Edwards, Bailey & Lander, Decatur, GA, for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on a motion to strike filed by Defendants Garner, Parker, Parrish, Sellers, Lee, and Young; Defendant Jones' motion to strike and renewed motion for more definite statement; Defendants' joint motion to dismiss; and Plaintiff's motion to strike.

## I. STATEMENT OF THE CASE

Plaintiff, a state prisoner in the Valdosta State Prison, brings this claim under 42 U.S.C. § 1983 asserting violations of his constitutional rights, as well as state law claims against Defendants Wayne Garner, Bruce Lee, Garrison Parker, Robert Parrish, and Phil Sellers.[1] Plaintiff filed his original complaint *pro se* on March 25, 1997 and thereafter supplemented the complaint on April 23, 1997. An amended complaint was also filed on July 10, 1998. In his complaint, Plaintiff alleges that he was sexually abused by Defendant Willie Jones, a mental health counselor at Phillips Correctional Institute, while he was incarcerated at that facility between November 1995 and October 1996. Plaintiff also contends that Defendants Banks and Young, officers employed by the Department of Corrections and/or Phillips Correctional Institute, took part in this abuse, and that the abuse took place with the full knowledge of Defendants Garner, Lee, Parker, Parrish, and Sellers. Plaintiff seeks compensatory and punitive damages, as well as costs and attorney's fees. Defendant Banks was voluntarily dismissed from this action on April 30, 1998.

---

1. Defendant Garner is the Commissioner of the Department of Corrections, Defendant Lee is the Mental Health Director of the Phillips Correctional Institute, Defendant Parker was the Warden of the Phillips Correctional Institute, Defendant Parrish was the Deputy Warden of the Phillips Correctional Institute, and Defendant Sellers was the Deputy Warden of Care and Treatment at that facility.

In an order dated October 16, 1997, this court appointed counsel to assist Plaintiff. On December 12, 1997, Shandor Syed Badaruddin was appointed from the Pro Bono Panel to represent Plaintiff in this action. Mr. Badaruddin was assisted by Ms. Michelle Moriairty. On March 17, 1998, counsel for Plaintiff filed a motion to withdraw and substitute J. Malik Abdullah Frederick as counsel for Plaintiff. This motion was granted by the court on March 26, 1998. Also on March 17, 1998, Mr. Frederick, as new counsel for Plaintiff, filed a motion for leave to file a second amended complaint. On July 10, 1998, this court issued an order in which it, among other things, granted in part and denied in part a motion for summary judgment filed by Defendants Garner, Lee, and Young. Additionally, the court granted Plaintiff's motion to file a second amended complaint.

In an order dated March 15, 1999, the court, among other things, dismissed the state law claims against Defendants Garner, Parker, Parrish, Sellers, and Lee and denied as moot Defendant Young's motion to dismiss the state law claims. The court also granted Defendant Jones' motion for a more definite statement, allowing Plaintiff ten days to provide more definite statements as to paragraphs 12, 37, 39, 77(d), 83, and 87 of the second amended complaint. Plaintiff filed a document entitled, "Third Amended Complaint" on April 26, 1999. Defendants Garner, Parker, Parrish, Sellers, Lee, and Young filed a motion to strike certain portions of the third amended complaint on May 7, 1999. Similarly, on May 12, 1999, Defendant Jones filed a motion to strike the third amended complaint and renewed his motion for a more definite statement. On May 18, 1999, Defendants filed a joint motion to dismiss for lack of subject matter jurisdiction because Plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e. Plaintiff subsequently filed a motion to strike Defendants' motion to dismiss on June 18, 1999.

## II. DISCUSSION

The court begins with Defendants' motion to dismiss. Defendants assert that Plaintiff failed to exhaust his administrative remedies prior to bringing suit and his claims are therefore barred under § 1997e. In support of their claim, Defendants have provided the court with a copy of a letter from the Georgia Department of Corrections' ("DOC") Inmate Affairs and Appeals Division, dated May 11, 1999, which indicates that Plaintiff did not file any grievances with Inmate Affairs and Appeals between October 1995 and October 1996 that allege any type of abuse. Plaintiff, however, responds that he did in fact exhaust his administrative remedies before filing suit and that, in any event, Plaintiff's claims are not grievable under the Georgia Department of Corrections Standard Operating Procedures ("SOP").[2] To support his position, Plaintiff has provided the court with a copy of a letter from DOC's Legal Services Office indicating that Plaintiff has, at some time, filed some sort of complaint against Defendant Jones. Plaintiff has also submitted what appears to be the 1996 version of the SOP.

### A. *The PLRA's Exhaustion Requirement*

Section 1997e, enacted as part of the Prison Litigation Reform Act ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Eleventh Circuit has held that this section mandates exhaustion of a prisoner's administrative

---

**2.** Plaintiff initially moved to strike Defendants' motion to dismiss as violative of both the Federal Rules of Civil Procedure and this court's local rules. In his out-of-time response, however, Plaintiff asks to withdraw his motion to strike and further requests the court to extend the time for filing his response. Accordingly, the court will consider Plaintiff's response, though untimely, and hereby DENIES as moot his motion to strike.

remedies and that courts no longer have discretion to waive the exhaustion requirement. *Alexander v. Hawk,* 159 F.3d 1321, 1325–26 (11th Cir.1998). This holds true even when the administrative remedies are deemed futile or inadequate. *Id.* at 1326. Indeed, the Circuit has held that § 1997e(a)'s exhaustion requirement constitutes a "pre-condition to suit," making the requirement jurisdictional in nature. *Id.* (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), which holds that where exhaustion is a statutorily specified jurisdictional prerequisite, "the requirement ... may not be dispensed with merely by a judicial conclusion of futility").

The court recognizes that there is currently a split in authority as to whether § 1997e(a) applies to claims of abuse or excessive force. *Compare Freeman v. Francis,* 196 F.3d 641 (6th Cir.1999) (holding that exhaustion requirement applies to excessive force claims); *Diezcabeza v. Lynch,* 75 F.Supp.2d 250 (S.D.N.Y.1999) (same); *Johnson v. Garraghty,* 57 F.Supp.2d 321 (E.D.Va.1999) (same); *Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884 (S.D.N.Y.1998) (same); *Moore v. Smith,* 18 F.Supp.2d 1360 (N.D.Ga.1998) (same); *with Wright v. Dee,* 54 F.Supp.2d 199 (S.D.N.Y.1999) (holding that excessive force claims are not subject to exhaustion requirement); *White v. Fauver,* 19 F.Supp.2d 305 (D.N.J.1998) (same); *Rodriguez v. Berbary,* 992 F.Supp. 592 (W.D.N.Y.1998) (same). Because the Eleventh Circuit has not yet determined this issue, the court must decide whether or not Plaintiff was required to exhaust the available administrative remedies before it resolves Defendants' motion to dismiss.

■ "The starting point for all statutory interpretation is the language of the statute itself." *United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir.1999). The PLRA's exhaustion requirement applies to those actions brought by prisoners "with respect to prison conditions." 42 U.S.C. § 1997e(a). Unfortunately, the phrase "action ... with respect to prison conditions" is not defined in § 1997e. As several courts have noted, however, another section of the PLRA defines the phrase "civil action with respect to prison conditions" as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(g)(2); *see also Freeman,* 196 F.3d at 643; *Moore,* 18 F.Supp.2d at 1363. It is generally recognized that "words have the same meaning throughout a given statute," *Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1350 (11th Cir. 1997), and the definition found in § 3626(g)(2) therefore applies to § 1997e as well. The only appellate court to decide the issue, along with several lower courts, has concluded that the language pertaining to "the effects of actions by government officials on the lives of persons confined in prison" includes claims of abuse or excessive force by prison officials. *Freeman,* 196 F.3d at 643–44; *see also Moore,* 18 F.Supp.2d at 1363. Under this authority, then, Plaintiff's claims of sexual abuse are covered by the PLRA's exhaustion requirement.

■ This court questions whether the aforementioned language from § 3626(g)(2) unambiguously embraces incidents of abuse such as that alleged here. Indeed, the court can imagine several circumstances not involving abuse or excessive force that would qualify as "effects of actions by government officials on the lives of [prisoners]" and that would more readily fit into the everyday meaning of "prison conditions." Nevertheless, the court is persuaded by the purposes and history underlying the PLRA, as well as the seemingly broad reading given to § 1997e(a) by the Eleventh Circuit, that Congress did not intend to exempt claims of abuse or excessive force from the requirement that

prisoners exhaust available administrative remedies.

The Eleventh Circuit has clearly indicated that "Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court.'" *Alexander,* 159 F.3d at 1324 (quoting 141 Cong.Rec. H1472–06 (daily ed. Feb. 9, 1995)). In discussing this purpose of § 1997e(a), the Eleventh Circuit made no distinction between lawsuits alleging excessive force and lawsuits complaining about general prison conditions. A review of the legislative history similarly reveals no distinction between lawsuits contesting general conditions of confinement and those premised on abuse or excessive force. *See, e.g.,* 141 Cong. Rec. H1472–06 (1995) (statement of Rep. McCollum) (noting that PLRA "requires that all administrative remedies be exhausted before a prisoner can bring a civil action in Federal court"); *id.* (statement of Rep. Canady) (indicating that "bill will significantly curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court"); 141 Cong.Rec. S14408–01 (1995) (statement of Sen. Dole) (noting "astronomical[ ]" growth in number of "due-process and cruel and unusual punishment complaints"); *id.* (statement of Sen. Hatch) (recognizing that federal inmates filed 39,000 lawsuits in 1994, excluding only "habeas corpus petitions or other cases challenging the inmate's conviction or sentence").[3] In fact, opponents of the PLRA apparently understood that claims of abuse and excessive force would be included in the exhaustion requirement. *See, e.g.,* 141 Cong.Rec. S14611–01 (1995) (statement of Sen. Biden) (discussing case of assault and case of sexual abuse as examples of meritorious lawsuits that

would be impeded by PLRA). Moreover, the definition provided in § 3626(g)(2) specifically excludes only habeas corpus proceedings and similar actions "challenging the fact or duration of confinement." Had Congress meant to exclude lawsuits alleging abuse or excessive force, it presumably would have done so explicitly, as it did with habeas proceedings.

The legislative history of the PLRA clearly shows that Congress was concerned with the costs to taxpayers resulting from the flood of prisoner lawsuits, as well as the amount of time federal courts spend addressing prisoner claims. Mandatory exhaustion constitutes one instrument Congress established to deal with these concerns. *See Alexander,* 159 F.3d at 1324. Because excessive force claims can be just as costly, time-consuming, and sometimes as frivolous, as those concerning the general conditions of confinement, the court cannot conclude that Congress intended to exempt such claims from the PLRA's exhaustion requirement.

In addition to the legislative history, the court further finds support for its conclusion in the Eleventh Circuit's opinion in *Alexander.* In discussing its ruling that § 1997e(a) applied to both state and federal prisoners, the *Alexander* court noted that the new administrative exhaustion requirement "will require that *all cases* brought by Federal inmates contesting *any aspect* of their incarceration be submitted to administrative remedy process before proceeding to court." *Alexander,* 159 F.3d at 1325 (quoting 141 Cong.Rec. H14078–02 (daily ed. Dec. 6,1995)) (emphasis added). The court also cited with approval language from a Tenth Circuit opinion, addressing claims of both deliberate indifference to the prisoner's medical needs and the use of excessive force, indicating that "... § 1997e pertains to '*any* action brought ... under ... *any* [ ] Fed-

---

**3.** As the Eleventh Circuit has recognized, "because Congress enacted PLRA as a rider to an appropriations bill, 'floor debate is more indicative of legislative intent than it otherwise would be, especially where the floor state-

ments in favor of the bill remain uncontested.'" *Alexander,* 159 F.3d at 1325 n. 8 (quoting *Garrett v. Hawk,* 127 F.3d 1263, 1265 n. 2 (10th Cir.1997)).

eral law....'" *Id.* at 1324 (quoting *Garrett v. Hawk,* 127 F.3d 1263, 1265 (10th Cir. 1997)) (emphasis in original).[4] Such broad language strongly suggests the absence of a distinction between claims premised on abuse or excessive force and those based on the administration of the prison. Further, the *Alexander* court rejected the argument that courts could waive exhaustion on grounds of futility or inadequacy because "[s]uch an interpretation would impose an enormous loophole in the PLRA, which Congress clearly did not intend." *Id.* at 1326. Exempting claims of abuse or excessive force would similarly create "an enormous loophole in the PLRA" and encourage prisoners to include such claims, whether founded or not, in an effort to bypass § 1997e(a).

Finally, the Eleventh Circuit has recognized seven policies favoring its "longstanding recognition of the usefulness of exhaustion requirements:"

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

*Alexander,* 159 F.3d at 1327 (quoting *Kobleur v. Group Hospitalization & Med. Services, Inc.,* 954 F.2d 705, 712 (11th Cir. 1992)). The court recognizes that *Alexander* concerned claims for injunctive relief as well as money damages, whereas Plaintiff in this case seeks only monetary relief. The court also recognizes that many of the policies mentioned in *Alexander* are arguably more relevant to claims seeking some form of prospective remedy. The Eleventh Circuit, however, has made clear that claims for money damages are not exempt from § 1997e(a). *Id.* at 1326–27; *see also Miller,* 196 F.3d at 1193 (stating that court deciding whether plaintiff exhausted administrative remedies "do[es] not review the effectiveness of those remedies, but rather whether remedies were made available and exhausted"). Additionally, as demonstrated below, some of the policies favoring exhaustion apply equally to all claims regardless of the relief sought. For the foregoing reasons, the court concludes that the exhaustion requirement found in § 1997e(a) applies to claims of abuse or excessive force and accordingly applies to the claims brought in the instant case.

B. *Exhaustion of Administrative Remedies*

 Having determined that Plaintiff must exhaust his available administrative remedies, the court must now consider whether he has done so. Defendants challenge the court's jurisdiction to hear Plaintiff's complaint on the grounds that Plaintiff has not fulfilled the exhaustion requirement, which constitutes a pre-condition to filing suit. Attacks on subject matter jurisdiction come in two forms: (1) facial attacks, and (2) factual attacks.

---

4. The *Garrett* court held that § 1997e(a)'s exhaustion requirement applied to both claims raised in that case, but the court reversed the district court's dismissal on the grounds that the prisoner did not have any administrative remedies available to him. *Garrett,* 127 F.3d at 1266. At least one other Circuit, without discussing the issue raised here, has applied the PLRA's exhaustion requirement to claims of excessive force. *Wendell v. Asher,* 162 F.3d

887 (5th Cir.1998) (affirming district court's dismissal of excessive force claim for failure to exhaust administrative remedies). *Cf. Miller v. Tanner,* 196 F.3d 1190 (11th Cir.1999) (reversing dismissal after finding that prisoner exhausted remedies available to him, but declining opportunity to reverse on grounds that excessive force claims are not covered by § 1997e(a)).

*See, e.g., Scarfo v. Ginsberg,* 175 F.3d 957, 960 (11th Cir.1999). "Facial attacks on a complaint 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion.' " *Id.* (quoting *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990)) (alteration in original). "Factual attacks challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.' " *Id.* (quoting *Lawrence,* 919 F.2d at 1529). Although facial attacks afford the plaintiff protections analogous to those provided by Rule 12(b)(6), the presumption of truthfulness does not attach to allegations under a factual attack. *See id.* at 960–61. In a factual attack, the plaintiff has the burden of proving that jurisdiction does in fact exist. *See Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981).[5] In this case, where Defendants assert a factual challenge to jurisdiction, Plaintiff has failed to meet that burden.

Defendants have submitted evidence indicating that Plaintiff has not exhausted his administrative remedies. In response, Plaintiff has submitted a letter from the DOC's Legal Services Office indicating that Plaintiff has filed some sort of complaint against Defendant Jones with that office. The letter additionally indicates that the DOC's Internal Affairs Division has concluded their investigation of the complaint and that, because of the criminal and employment implications involved in the situation, the DOC could not comment further. Plaintiff claims that this indicates that the DOC has done all it plans to do on the matter. Therefore, according to Plaintiff, he has no further administrative remedy available to him. The court finds this argument unpersuasive. In essence, Plaintiff contends that to further pursue administrative remedies with the DOC would prove futile or inadequate because the Legal Services Office has declined to offer additional information. As demonstrated, however, the Eleventh Circuit has rejected the notion that futility and inadequacy excuse the exhaustion requirement of § 1997e.

Additionally, Plaintiff makes no effort to rebut Defendants' evidence that he failed to file any grievance against Defendant Jones while incarcerated at Phillips Correctional Institute during the time the alleged violations occurred. Although Plaintiff appears to have filed some sort of complaint with the Legal Services Office, he has not shown any compliance with the grievance procedure outlined in the SOP, which is designed both to provide inmates an opportunity to present their allegations and to facilitate resolution of their claims. *See* Plaintiff's Ex. B, at § I. While the court recognizes that the time for filing such a grievance has expired, the SOP allows for the waiver of this limitation for good cause shown. *See* Plaintiff's Ex. B, at § VI.D.6. *See also Harper v. Jenkin,* 179 F.3d 1311, 1312 (11th Cir.1999) (finding that plaintiff failed to exhaust administrative remedies where procedure allowed for out-of-time grievances upon showing of good cause). Therefore, an administrative remedy remains available. Moreover, several of the policy reasons articulated by the Eleventh Circuit for requiring exhaustion are applicable in this case: allowing the agency to develop the necessary factual background upon which decisions should be based; preserving judicial resources; avoiding the weakening of the administrative process by discouraging frequent and deliberate flouting of that process; and affording the agency an opportunity to discover and correct its own errors. *Alexander,* 159 F.3d at 1327.

Finally, pointing to SOP § VI.B.2, Plaintiff argues that the SOP's grievance procedure is not available to him because his

---

**5.** In *Bonner. v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

claims are not cognizable under that procedure. That section provides:

> Matters over which the Department has no control may not be grieved. These matters include parole decisions, sentences, tort claims against the U.S. Postal Service for loss of mail, tort claims against private citizens or other state agencies, and any matter established by the laws of the state.

Plaintiff's Ex. B, at § VI.B.2. Plaintiff contends that the instances of sexual abuse underlying his complaint constitute "matters established by the laws of the state" and are therefore not covered by the grievance procedure. The court again recognizes that "[t]he starting point for all statutory interpretation is the language of the statute itself." *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir.1999). Applying this principle to the aforementioned provision, one readily ascertains that the SOP grievance procedure precludes those "[m]atters over which the Department has no control." Indeed, while citing to § VI.B.2, Plaintiff seemingly ignores § VI.B.1, which provides that "[e]xcept as stipulated below, *any* condition, policy, procedure or action (or lack thereof) directed toward inmates over which the Georgia Department of Corrections has control may be grieved." Plaintiff's Ex. 2., at § VI.B.1. The DOC certainly exercises control over the conduct of its employees while working in its facilities. Next, the provision expressly precludes certain types of tort claims: those concerning certain postal matters, those against private citizens, and those against state agencies other than the DOC. Noticeably absent from the list are tort claims against the DOC itself and the persons it employs. Had the DOC meant to exclude these latter claims, it certainly knew how to express such an intent. Finally, the language concerning "any matter established by the laws of the state" should be read in line with the doctrine of *noscitur a sociis*, which holds "that a word is known by the company it keeps." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Applying this doctrine to the SOP provision at issue, the matters of state law referred to are those over which the DOC has no control, such as parole decisions, sentences, and torts committed by private citizens or other state agencies. As stated, the DOC exercises control over those persons in its employ, and actions taken by such persons appear to be covered by the grievance procedure. *See* Plaintiff's Ex. 2, at § VI.B.1.

In any event, the court notes another policy reason favoring mandatory exhaustion: the agency should be afforded an opportunity to define and interpret its own provisions. *See Alexander*, 159 F.3d at 1327. By not utilizing the administrative grievance procedure outlined in the SOP, Plaintiff has precluded the DOC from interpreting the scope of its jurisdiction under that procedure, an issue which the SOP expressly covers. *See* Plaintiff's Ex. 2, at § VI.B.1 ("In the event a question arises concerning the jurisdiction of the grievance procedure over the ... action challenged, this question shall be submitted and resolved as a part of the grievance."). Accordingly, the court GRANTS Defendants' joint motion to dismiss. Because this ruling disposes of the case, the other motions filed by Defendants are hereby DENIED as moot.

### III. CONCLUSION

The court GRANTS Defendants' joint motion to dismiss [83–1] and DENIES as moot Plaintiff's motion to strike, Defendant Jones' motion to strike and renewed motion for more definite statement, and the motion to strike filed by Defendants Garner, Parker, Parrish, Sellers, Lee, and Young [81–1, 82–1, 82–2, 85–1]. The Clerk of the Court is DIRECTED to DISMISS this case WITHOUT PREJUDICE to Plaintiff's right to refile after exhausting his administrative remedies.